Argued 20 June, decided 17 July, rehearing denied 28 August, 1905.

## McCLUNG *v.* McPHERSON.

81 Pac. 567, 82 Pac. 13.

TRIAL BY COURT — TIME FOR SUBMITTING PROPOSITIONS.

1. Section 134, B. & C. Comp., providing that any party, when the evidence is closed, may submit in distinct and concise propositions the conclusions of fact which he claims to be established, or the conclusion of law which he desires to be adjudged, or both, does not apply to a trial of an issue of fact by the court alone, and hence a demand for additional conclusions of fact made before the entry of judgment on the findings is not too late.

APPEAL — CONCLUSIVENESS OF FINDINGS BY COURT.

2. Where a case is tried without a jury, the court's findings of fact are like a special verdict, and will be disturbed on appeal only when the evidence is insufficient as a matter of law to support the conclusions of fact.

APPEAL — EFFECT OF EXCEPTION TO FINDINGS AND CONCLUSION.

3. Where a case is tried to the court alone, and there is no conflict in the testimony, but in consequence of a misapplication of the law an error is committed in the findings of fact, an exception to such conclusion and a request for other findings will bring up for review the action of the court in denying the application.

LANDLORD AND TENANT — SALE OF LEASED PREMISES — WHO MAY GIVE NOTICE TO QUIT.

4. A stipulation in a lease reserving to the lessor the right to terminate the lease, if the property shall be sold, by giving a specified notice of the sale and of a desire to resume possession of the premises, operates as a covenant running with the land, and authorizes the grantee to so terminate the lease, though the word "assigns" does not appear in the written instrument; but such a clause also operates to reserve to the original lessor the right to give the prescribed notice after the delivery of a deed thereto.

EFFECT OF NOTICE TO MOVE OR PAY INCREASED RENT.

5. A notice by a landlord to a tenant that unless he vacates the premises the rent will be a stated amount other than that reserved by the lease is ineffectual for any purpose.

NOTICE TO QUIT BY ATTORNEY OR AGENT.

6. A notice to quit may be given by an authorized agent or attorney, and a failure to object to a notice signed by attorneys when offered is a waiver of that objection thereto.

SPECIAL DIRECTION ON REVERSING JUDGMENT.

7. When the trial court sitting as a jury has erred in the law, and the facts are undisputed, the judgment may be reversed with special directions as to the proceedings, rather than to hold a new trial.

Premature Action—Abatement—Waiver of Objection.

8. An objection that an action to recover possession of land was prematurely brought, and should be dismissed, because of plaintiff's failure to serve a notice legally sufficient to terminate defendant's tenancy of the premises in question, must be raised by plea in abatement, and is waived by answering to the merits.

Writings Signed by Agent—Need of Proving Authority.

9. Where the validity of a private writing, purporting to have been signed by an agent on behalf of his principal, is challenged, the document is not admissible in evidence without express or implied proof of the agent's authority.

Waiver of Defect in Evidence by Not Objecting.

10. A defect in the form or sufficiency of writings offered in evidence is waived unless objected to when the evidence is offered. Thus: Failure of a tenant to object to the introduction in evidence of a notice to quit signed by his landlord's attorneys concedes the attorneys' authority to sign the notice.

Province of Court to Construe Written Evidence.

11. When written evidence is offered it becomes the duty of the court to determine its sufficiency, and the admission of the writing without objection is a waiver of formal objections only.

Requisites of Notice to Quit.

12. Under B. & C. Comp. § 5756, requiring a notice to be in writing and served upon the tenant, or left at the premises, such notice must be in writing, and should describe the premises with reasonable certainty for identification, and require the tenant to remove therefrom on a specified day.

From Multnomah: Alfred F. Sears, Jr., Judge.

This action was commenced by J. H. McClung against W. E. McPherson in a justice's court of Multnomah County to recover the possession of certain real property, and, the cause being at issue and tried, plaintiff secured the judgment. An execution was issued thereon, and the demanded premises delivered to plaintiff, whereupon the defendant appealed from such judgment to the circuit court for that county, which, without a jury, tried the cause, and made findings of fact as follows:

"(1) That on April 16, 1904, the date of commencing this action, the defendant, W. E. McPherson, was in possession of the following described premises, to wit, that certain building commonly called and known as the Tremont House, situated on part of lot 1, in block 50, Couch's Addition to the City of Portland, Multnomah County, State of Oregon.

(2) That said defendant did not on April 16, 1904, the date of commencing this action, and ever since does not, unlawfully hold the same with force from said plaintiff.

(3) That said plaintiff is not entitled to the immediate or any possession thereof.

(4) That defendant was removed from the possession of said premises April 25, 1904, by Victor Howard, appointed to make service of execution issued in this case by William Reid, Justice of the Peace for Portland District, Multnomah County, State of Oregon, and the plaintiff on said April 25, 1904, was put in the possession of said premises under said execution by said officer."

As conclusions of law the court also found, in effect, that defendant was entitled to a judgment reversing the one given in the justice's court in this action, and for his costs and disbursements, and that he was further entitled to a judgment for the restitution of the premises in question, and that execution issue therefor. Thereafter plaintiff's counsel excepted to the findings so made, requested the court to make others, and also moved for a new trial. These objections and applications having been severally overruled and denied, judgment was given in accordance with the findings as made, and plaintiff appeals.

REVERSED.

For appellant there was a brief with oral arguments by *Mr. Hayward Howard Riddell, Mr. Schuyler Colfax Spencer, Mr. William Melvin Davis*, and *Mr. Martin Luther Pipes.*

For respondent there was a brief over the names of *Claude Strahan* and *Ralph Roloefson Duniway*, with an oral argument by *Mr. Duniway.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended by plaintiff's counsel that the court erred in refusing to find the facts as requested. It is maintained by defendant's counsel, however, that the request for other findings was not made within the time prescribed, and that those demanded were not warranted by the evidence. The statute invoked by defendant's counsel in support of the legal principle insisted upon is as follows:

"Any party may, when the evidence is closed, submit in distinct and concise propositions, the conclusions of fact which he claims to be established, or the conclusion of law, which he desires to be adjudged, or both. They may be written and handed to the court, or, at the option of the court, oral, and entered in the judge's minutes": B. & C. Comp. § 134. This section is incorporated in the chapter of the Code of this State relating to the conduct of a trial by jury. The submission of an issue of fact to the court alone for trial is equivalent to a demand for a special verdict, which necessitates a finding on every material issue involved. As no request for findings on such issues is necessary, if the court should fail to make any thereon, a party would not be precluded from demanding them because he did not submit the conclusions of fact which he claimed were established when the evidence was closed. In the case at bar judgment on the findings had not been given when the court was requested to make other findings. In our opinion, the section of the statute adverted to is not applicable to a trial of an issue of fact by the court alone, and, this being so, the demand for other conclusions of fact was made in ample time.

2. When a cause is tried without a jury, the findings of fact made by the court are like a special verdict (*Kyle* v. *Rippy*, 19 Or. 186, 25 Pac. 141), and will be disturbed only when the evidence is insufficient, as a matter of law, to support the conclusions of fact: *Good* v. *Smith*, 44 Or. 578 (76 Pac. 354); *Gorman* v. *McGowan*, 44 Or. 597 (76 Pac. 769).

3. In such case, if there is no conflict in the testimony, but in consequence of the misapplication of the law thereto an error is committed in the findings of fact, an exception to such conclusion and a request for other findings will bring up for review the action of the court in denying the application : *Fulton* v. *Earhart*, 4 Or. 61; *Hicklin* v. *McClear*,

18 Or. 126 (22 Pac. 1057); *Wheeler* v. *Burckhardt,* 34 Or. 504 (56 Pac. 644).

All the evidence introduced at the trial in the circuit court is incorporated in the bill of exceptions, which shows that on October 29, 1903, the Savings & Loan Society, a corporation, was the owner in fee of the premises hereinbefore described, which on that day it leased to the defendant for a term of two years at $100 per month, payable monthly in advance on the first day of each month. The material covenants of the lease are as follows:

"And it is understood and agreed that said lessee, at the expiration of said term, or upon any sooner determination of this lease, will quit and deliver up the premises and all future additions thereto to the lessor or its agent, peaceably and quietly. * * And it is further understood and agreed, that as a part of the consideration for making this lease, the lessor reserves the right to terminate this lease at any time in case it should sell said leased property by giving said lessee sixty (60) days' notice in writing of such sale and its intention to terminate said lease. And said lessee hereby covenants and agrees to quit and deliver up said leased premises at the expiration of sixty (60) days from the giving of said notice in writing of the sale of said premises and the lessor's intention to terminate said lease.

Provided Always, and this lease is made upon this condition, that if the said rent shall be in arrears for the space of five (5) days after the same has become due, as hereinbefore provided, or if the said lessee, his successors or assigns, shall fail or neglect or fail to perform or observe any of the covenants and conditions hereinbefore mentioned and contained on his part to be performed, then and in either of said cases the said lessor or its agent may immediately or at any time thereafter, and while such neglect or default continues, without further notice or demand enter into said leased building or any part thereof, in the name of the whole, and repossess the same as of its former estate, and expel the said lessee, or those claiming under him, and remove his or their effects, forcibly, if necessary, without being taken or deemed guilty in any

manner of trespass, and without abridging any of the remedies which might otherwise be used for any arrears of rent or preceding breach of covenant."

The lessor, on January 28, 1904, for the expressed consideration of $22,500, conveyed the demised premises to plaintiff, and at the same time also assigned to him the lease and all rights and privileges thereunder. This deed was recorded February 3, 1904, and thereafter, but on the same day, the following notice was served upon the defendant:

"Portland, Oregon, January 28, 1904.
To W. E. McPherson:

You are hereby notified that the Savings & Loan Society, of San Francisco, California, a corporation, has sold lot 1, in block 50, Couch's Addition to the City of Portland, Multnomah County, Oregon, and intends to terminate the lease made to you of the 'Tremont House,' situated on a part of lot 1, in block 50, in Couch's Addition to the City of Portland, Multnomah County, Oregon. You are notified to quit and deliver up the said leased premises to the said Savings & Loan Society, or its assigns, within 60 days from the date of the service of this notice upon you.

{ Corporate }                    Savings & Loan Society,
{ seal. }                        By Arthur A. Smith, President."

The possession of the premises not having been surrendered as demanded, the following notice was served upon the defendant the day it bears date, to wit:

"To W. E. McPherson:

Take notice that you are hereby required to quit and deliver up to me, the undersigned, the possession of the premises now held and occupied by you, being commonly called The Tremont House, situate on part of lot 1, block 50, Couch's Addition to the City of Portland, Multnomah County, State of Oregon, at the expiration of ten days from the date of the service of this notice upon you. This is intended as a ten days' notice to quit as provided by the laws of the State of Oregon. If you do not deliver up to

me the possession of said premises, as required by this notice, I shall institute legal proceedings against you to recover the possession of said premises.

Yours truly,             J. H. McClung, Landlord,
                    By Spencer & Davis, Attorneys.
Portland, Oregon, April 5th, '04."

The defendant not having complied with the requirement of these notices, this action was commenced to secure the possession of the premises. The bill of exceptions also shows that on February 3, 1904, when the first notice was served on the defendant, he paid plaintiff's agent $100 as rent for that month, but that he never made or tendered any further payments on account thereof.

The court refused to make findings as requested by plaintiff's counsel, which may be summarized as follows: (1) That on February 3, 1904, and subsequent thereto, the defendant, as plaintiff's tenant, was in possession of the Tremont House in pursuance of the lease executed by the Savings & Loan Society. (2) That on February 3, 1904, the defendant paid plaintiff the sum of $100 as rent for that month. (3) That on April 16, 1904, when this action was instituted, the defendant, as plaintiff's tenant, continued in possession of the demanded premises. (4) That on April 16, 1904, the defendant was indebted to plaintiff in the sum of $100 for the rent of the Tremont House for March, 1904. (5) That on April 5, 1904, the defendant was served with a notice signed by Spencer & Davis, attorneys for plaintiff. (6) That defendant has not paid plaintiff any rent for the use of the premises since February 3, 1904, and all the rent accruing since March 1, 1904, is past due and wholly unpaid. (7) That on February 3, 1904, plaintiff caused to be served on defendant the notice signed by the Savings & Loan Society. (8) That on February 3, 1904, plaintiff caused to be served on defendant a notice signed by himself, setting out what purports to be a copy

thereof, requiring the defendant to deliver the possession of the premises to him. As conclusions of law the court was requested, but refused, to find that plaintiff was entitled to a judgment affirming the judgment given in this action in the justice's court, with costs and disbursements; that he is, and since the commencement of this action has been, entitled to the possession of the Tremont House.

The bill of exceptions shows that the evidence introduced to prove the eighth finding of fact requested by plaintiff's counsel is controverted by the defendant, who testified that when the notice given by the Savings & Loan Society was delivered to him February 3, 1904, no notice purporting to have been signed by plaintiff, his agent or attorney, was tendered him. One of the grounds on which the circuit court based its findings of fact is that the notice served on the defendant to determine the tenancy was given in the name of the Savings & Loan Society after it had conveyed to plaintiff the legal title to the leased premises, and for this reason it was held that such notice was ineffectual for any purpose: The court having made the conclusion of facts to which exceptions were taken, impliedly found that plaintiff did not give to defendant any notice to determine the tenancy, though one of plaintiff's witnesses testified that at the time the notice signed by the Savings & Loan Society was served he also delivered to the defendant a notice to which he subscribed plaintiff's name as his agent. The findings of fact made by a court in the trial of an action at law, without a jury, are equivalent to a special verdict, and not subject to review on appeal, if such conclusions are supported by any competent evidence: *McKay* v. *Freeman,* 6 Or. 449; *Hallock* v. *Portland,* 8 Or. 29; *Williams* v. *Gallick,* 11 Or. 337 (3 Pac. 469); *Astoria Ry. Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14). The implied finding that plaintiff did not serve on the defendant a notice to determine the tenancy, being based on testi-

mony, the trial court was the exclusive judge of the weight thereof, and its determination in this respect cannot be reviewed on appeal, thus preventing a consideration of the eighth finding of fact requested by plaintiff's counsel, though we are of the opinion that the court should have found either one way or the other on this disputed evidence.

4. The preliminary matter having been eliminated, we come to the consideration of the question whether or not, under the peculiar covenants of the lease, the Savings & Loan Society, after it had parted with the legal title to the demised premises, could, in its own name, give to the defendant a notice which would be sufficient to determine the tenancy. The stipulation whereby the corporation reserved the right to terminate the lease at any time it might sell the real property by giving 60 days' notice in writing of such sale and of its intention to sever the relation of landlord and tenant manifests a purpose to create a covenant that would run with the reversion, authorizing its grantee to terminate the lease, though the word "assigns" does not appear in the written agreement: *Hadley* v. *Bernero*, 97 Mo. App. 314 (71 S. W. 451). A conveyance of leased premises without reservation carries with it, by operation of law, the grantor's right to terminate the tenancy (*Roberts* v. *McPherson*, 62 N. J. Law, 165, 40 Atl. 630), which may be done by a notice to quit given in the name of the landlord: 2 Taylor, Land. & Ten. (9 ed.), § 479; *Reeder* v. *Sayre*, 70 N. Y. 180 (26 Am. Rep. 567). Where the lessor, who reserves the right to terminate a lease by giving a specified notice, conveys the demised premises, he cannot thereafter give in his own name a notice to the lessee which will be effectual to terminate the tenancy: *Griffin* v. *Barton*, 22 N. Y. Misc. Rep. 228 (49 N. Y. Supp. 1021). The rule to be extracted from text-books relating to landlord and tenant, and from the opinions of judges

47 Or.——6

of courts of last resort who have considered this subject, would seem to lead to the conclusion, when applied to the case at bar, that, the leased premises having been conveyed to plaintiff, he thereby became the landlord, and was authorized to give in his own name a notice to the defendant which would have been adequate to terminate the lease. As a corollary resulting from the legal principle thus announced it would also seem necessarily to follow, though not involved herein, and referred to only by way of illustration, that, as the covenant in the lease whereby the tenancy could be terminated is not personal, but runs with the reservation, plaintiff took the title to the real property cum onere, and could not sever the relation existing between the parties, unless he also sold the premises and gave the required notice in his own name before he delivered the deed.

In an action to recover the possession of real property upon a termination of a lease containing a covenant authorizing the landlord to determine the tenant's estate in the premises by a sale thereof it might be extremely difficult for the plaintiff in such action to prove the bona fides of the sale until the deed evidencing a transfer of the title was actually delivered, and thus the tenant would at all times during the term possess the power to prevent or frustrate a termination of the lease. In the case at bar we believe a fair construction of the language of the covenant under consideration, when viewed in the light of the consequences assumed, induces the conclusion that the Savings & Loan Society reserved to itself the right to terminate the lease upon the sale of the premises, and to give the notice thereof in its own name after the delivery of the deed. The right which the rules of law gave the defendant to have the notice to terminate the lease issued in the name of the landlord was a benefit in which the public was not interested, and therefore he could waive such priv-

ilege. We believe the defendant, by accepting the lease containing the covenant adverted to, expressly waived the right to which he was entitled, and stipulated that, in case of the sale of the property during the term, the Savings & Loan Society might issue in its own name a notice to determine his estate in the premises, notwithstanding the corporation might deliver the deed evidencing a transfer of the title before it gave such notice. Considering this branch of the case, we believe an error was committed in applying the law to the facts involved, which are undisputed, and that the court should have made a finding in accordance herewith, as requested.

5. It is argued by defendant's counsel that if the notice given by the Savings & Loan Society in its own name, after it had conveyed the premises to plaintiff was sufficient to terminate the lease, a new tenancy from year to year was created by the service of the following notice:

"Portland, Oregon, April 1, 1904.
To W. E. McPherson:
You are hereby notified that from and after the 5th day of April, 1904, that I will charge and collect from you the sum of twenty ($20) dollars a day as rent for what is commonly called and known as the Tremont House, situated on part of lot one (1) in block fifty (50) in Couch's Addition to the City of Portland, Multnomah County, Oregon. I am the owner of this real estate, together with the Tremont House, situated thereon, and this is the amount that I have concluded to charge and collect from you if you continue to occupy said premises from and after the 5th day of April, 1904.
                    J. H. McClung.
        By Spencer & Davis, his attorneys."

The point thus insisted upon is, in our opinion, without merit, for the defendant does not base his right to the possession of the premises by a tenancy at will, created by the giving of the notice last quoted, but he relies upon

the original lease, asserting that his tenancy is not terminated by reason of the notice not having been signed by the proper party. The defendant, it is true, after he was notified that the rent would be $20 a day, continued in possession of the Tremont House until April 25, 1904, when he was evicted in pursuance of the execution issued out of the justice's court on the judgment given in this action. The defendant does not appear to have changed his position in consequence of the service of the notice last above quoted, so as to evidence the creation of a new contract for the payment of rent at the rate of $600 a month, when he had only been paying one sixth of that sum. If the retention of the possession of the leased premises by the defendant after the expiration of the time specified in such notice could be construed into an agreement to pay the rent therein stated, as would be implied by the creation of a tenancy from year to year, the plaintiff could as well have charged $200 a day for the use of the premises as the sum named. If a landlord, in a notice to quit, could specify the rent demanded as a penalty for retaining the possession of leased premises, he could name such an exorbitant sum as would necessarily bankrupt most tenants. To adopt such theory would be giving to plaintiff's counsel credit for creating a novel method of excluding a tenant. The notice relied upon to create a tenancy from year to year was ineffectual for any purpose, and it was evidently so treated by the defendant.

6. It will be remembered that a notice to which the plaintiff's name was evidently subscribed by his attorneys, was served on the defendant April 5, 1904, requiring him to quit and deliver up the possession of the premises at the expiration of 10 days from the date of the service thereof. It is maintained by defendant's counsel that, as no evidence was offered tending to show that plaintiff's attorneys were authorized to give a notice to quit in the

name of their client, no error was committed in rendering the judgment from which this appeal is taken. The law is well settled that a notice to quit may be given by the landlord or by his agent or attorney, but when given by either of the latter it must be by an agent who has authority to let the premises or has special authority to give the notice: 2 Taylor, Land. & Ten. (9 ed.), § 480; *Felton* v. *Millard*, 81 Cal. 540 (21 Pac. 533, 22 Pac. 750); *Mizner* v. *Munroe*, 10 Gray, 290; *Pickard* v. *Perley*, 45 N. H. 188 (86 Am. Dec. 153). Whatever the rule may be, however, it cannot be invoked in the case at bar, for no objection to the introduction of the notice was made when it was offered in evidence, the adverse party thereby conceding that plaintiff's attorneys were authorized to subscribe his name thereto; so that, if such notice was required, it was sufficient.

7. Errors having been committed, the judgment of the circuit court is reversed, and, there being no conflict in the evidence, the cause is remanded, with directions to make findings of fact and conclusions of law as herein indicated, and to render judgment thereon affirming the decision of the justice's court.          REVERSED.

---

Decided 28 August, 1905.

ON MOTION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion of the court.

8. A petition for a rehearing having been filed, it is insisted by defendant's counsel that in the former opinion a legal principle for which they contend was overlooked, to wit: That as the lease under which the defendant held the premises provided that the sum of $100, as rent, should be paid in advance on the 1st of each month, and also stipulated that in case of a sale of the real property a notice of 60 days should be given to determine the tenancy, and

as the notice given by the Savings & Loan Society was served on the defendant February 3, 1904, no action to recover the possession of the land could have been maintained until the end of a rent period then next ensuing after the expiration of the time specified in the notice, or prior to May 1 of that year, but, this action having been commenced April 16, 1904, the notice was insufficient. The doctrine invoked is to the effect that a notice to determine a tenant's estate in real property must require him to quit the demised premises at the end of one of the recurring periods of holding: 2 Taylor, Land. & Ten. (8 ed.), § 477; *Baker* v. *Adams*, 5 Cush. 99; *Hendry* v. *Squier*, 126 Ind. 19 (25 N. E. 830, 9 L. R. A. 798); *Dix* v. *Atkins*, 130 Mass. 171; *Hart* v. *Lindley*, 50 Mich. 20 (14 N. W. 682); *Steffens* v. *Earl*, 40 N. J. Law, 128 (29 Am. Rep. 214); *Finkelstein* v. *Herson*, 55 N. J. Law, 217 (26 Atl. 688). Whether or not such a rule is applicable in this State is not deemed necessary to a decision herein; for, if the principle is controlling, it was waived by the defendant. The point now insisted upon amounts to no more than an objection that the action was prematurely brought, and hence it should be dismissed. If so, the defendant's remedy was to interpose a plea in abatement; but, not having done so, his answer to the merits relinquished the right, if it exists: *Winter* v. *Norton*, 1 Or. 43; *Hopwood* v. *Patterson*, 2 Or. 49; *Derkeny* v. *Belfils*, 4 Or. 258; *Chamberlain* v. *Hibbard*, 26 Or. 428 (38 Pac. 437).

9. It is also argued that the burden was imposed upon plaintiff to prove what notice was given to terminate the lease and to authorize the bringing of this action; that permitting the notice, to which plaintiff's name was evidently subscribed by his attorneys, to be offered in evidence, without objection, did not admit its sufficiency; and that the distinction between the competency of evidence and the legal effect thereof was not maintained by this court.

The rule is quite general that where the validity of a private writing, purporting to have been signed by an agent on behalf of his principal, is challenged, the document is not admissible in evidence without proof of the agent's authority, express or implied: *Fadner* v. *Hibler*, 26 Ill. App. 639; *Swaine* v. *Maryott*, 28 N. J. Eq. 589; *Darst* v. *Doom*, 38 Ill. App. 397.

10. Where, however, the adverse party permits such paper to be offered in evidence without interposing an objection, he thereby admits the agent's authority. Thus, in *Bartlett* v. *O'Donoghue*, 72 Mo. 563, it was held that the failure of a party to object to the admission in evidence of an unacknowledged deed conceded its execution, the court saying: "The failure of the defendant to object to the introduction of this instrument in evidence, when offered, would dispense with any proof of its execution, but it could not impart to it any efficacy as a conveyance which it would not otherwise have. Being admitted in evidence as a genuine instrument, signed by the parties named therein as grantors, its legal effect was still to be determined, as much so as if it had been objected to when offered." So, too, in *Lowe* v. *Bliss*, 24 Ill. 168 (76 Am. Dec. 742), a promissory note having been received in evidence, Mr. Justice Walker, in referring thereto, said: "When the defendant permitted it to be read without objection, he must be held to have admitted that it was in evidence, and that it was duly executed, but not that it was sufficient evidence to warrant a recovery." In *Birney* v. *Haim*, 2 Litt. 262, it was held that, when a deed was offered in evidence purporting to have been executed by trustees of a town, the person against whom it was offered might object to its being read without proof that they were trustees, but that moving the court, after it had been read, to instruct the jury that nothing passed by the deed, was not the way to take advantage of the want of such evidence.

11. Permitting the introduction of evidence unchallenged does not admit it to be legally sufficient for the purpose for which it was offered: *State* v. *Kaufman*, 45 Mo. App. 656. In the case at bar, the failure of the defendant to object to the introduction in evidence of the notice signed by plaintiff's attorneys concedes their authority to subscribe his name to the writing; but it does not admit the sufficiency of the document, which it was the province of the court to determine and is the only question involved on this branch of the case.

12. A notice to quit must be in writing: B. & C. Comp. § 5756. It should describe the premises with reasonable certainty for identification and require the tenant to remove therefrom on a specified day: Gear, Land. & Ten. § 191; Taylor, Land. & Ten. (8 ed.), § 483. An examination of the notice served upon the defendant April 5, 1904, will show that it complies with these several requirements, and was, therefore, legally sufficient.

Believing that the former opinion correctly states the law applicable to the facts involved, we adhere thereto.

REVERSED: REHEARING DENIED.